**ALLIED INTERNATIONAL AMERICAN EAGLE TRADING CORP., Plaintiff,**

v.

**S.S. "EXPORT BAY", her engines, boilers, etc. and American Export Lines, Inc. (now Farrell Lines Incorporated), Defendant.**

No. 78 Civ. 2653–CLB.

United States District Court,
S. D. New York.

April 17, 1979.

Alexander Peltz, Dwyer & Peltz, New York City, for plaintiff.

John B. Conway, Kirlin, Campbell & Keating, New York City, for defendant.

BRIEANT, District Judge.

This claim for damages resulting from the non-delivery of cargo was tried before the Court without a jury on December 20, 1978. The complaint was filed on June 9, 1978 by Allied International American Eagle Trading Corp. ("Allied") as the owner of 31 kegs and 9 drums of steel fasteners, shipped from Kobe, Japan to the Port of New York. Part of that shipment, *i. e.*, two pallets each containing 9 kegs, was not delivered.

Defendant ocean carrier American Export Lines, Inc. ("American Export") (now

Farrell Lines Incorporated) is the owner and operator of defendant S.S. EXPORT BAY, and issued the Bill of Lading described below.

The rights of the parties under the contract of carriage are regulated by COGSA, 46 U.S.C. § 1300, *et seq.* Delivery in good order, and subsequent discharge at destination of only part of a shipment is *prima facie* evidence of liability and not disputed.

The Court in this case is called upon to construe the $500 per package limitation of liability clause in an ocean carrier's Bill of Lading as authorized by COGSA § 4(5), 46 U.S.C. § 1304(5). Plaintiff contends that the non-delivery of two pallets, each containing 9 kegs, subjects defendant to liability for 18 "packages" or $9,000. Defendant, while admitting non-delivery of the two pallets, urges the Court to find it liable for $1,000, representing the application of the package limitation to each of two pallets. The sole issue is should the individual kegs, or the palletized bundles of kegs be treated as the "package" for the purpose of applying the package limitation imposed by COGSA on the peculiar facts discussed below.

On May 31, 1977 at Kobe, Japan, in consideration of an agreed freight and pursuant to the terms of a Bill of Lading issued by defendant American Export, dated that day, UNICO of Tokyo delivered to American Export for transportation on the EXPORT BAY a shipment of steel fasteners consigned to order for delivery to the Port of New York. The Bill of Lading described the shipment as follows: under the column denoted as "no. of cont. or other pkgs" the shipment was described as 3 pallets (27 kegs) 4 kegs 9 drums, for a total of 16 packages. In addition, above that entry, there appears a stamped endorsement *by the carrier* describing the shipment as "3 pallets said to contain 27 packages, shipper's load and count."

The EXPORT BAY arrived in New York on July 11, 1977, and completed discharging cargo on July 14, 1977 at which time all that was delivered to plaintiff was 22 kegs and drums (9 drums, 4 loose kegs and 9 kegs which were contained in one pallet); 18 kegs contained in 2 pallets were not delivered.

The non-delivered kegs had been palletized by the manufacturer of the fasteners and are described as follows: at the base of the pallet was a wooden platform. The kegs were stowed on the platform, each pallet containing 3 rows of 3 kegs each. Over the top of the keg was fitted a wooden deck, with the same width and length as the platform upon which the kegs were placed. There were no sides to the pallets, the kegs being secured to the pallet by metal straps. For shipping in this manner, the plaintiff was given a pallet allowance of approximately $3.80 per pallet, although the freight rate is determined by the weight of the cargo shipped, *i. e.,* the rate for kegs shipped loose or on pallets is the same.

The package limitation issue here presented constantly recurs in this Court. The case of *Standard Electrica v. Hamburg Sudamerikanische D.G.,* 375 F.2d 943 (2d Cir. 1967), *cert. denied* 389 U.S. 831, 88 S.Ct. 97, 19 L.Ed.2d 89 has been cited as authority that the package limitation applies to a pallet. The case held that where a shipper had made up 9 pallets each containing 6 cardboard cartons of T.V. tuners, the pallet rather than the cartons constituted the "package." Both parties in *Standard Electrica* had characterized each pallet as a "package" in contemporary documents. However, in a later case, *Leather's Best, Inc. v. S.S. Mormaclynx,* 451 F.2d 800 (2d Cir. 1971), concerning a container shipment said to contain 99 bales of leather, the Court held that the container was not the package, but rather that the 99 bales of leather were each to be treated as packages for purposes of the COGSA limitation.

When the Court of Appeals next considered the issue, in *Royal Typewriter Co. v. M/V Kulmerland,* 483 F.2d 645 (2d Cir. 1973), it formulated the "functional economics test." That case concerned cargo shipped in an ocean shipping container. Under this test, it was held that if the contents of the container could have been carried feasibly in the individual packages or cartons in which they were shipped, the

$500 limitation would apply to each of the separate packages contained within the shipping container. See also, *Rosenbruch v. American Export Isbrandtsen Lines, Inc.,* 543 F.2d 967 (2d Cir. 1976), *cert. denied* 429 U.S. 939, 97 S.Ct. 353, 50 L.Ed.2d 308.

 In a case involving the shipment and subsequent non-delivery of 163 cartons packed in 9 pallets, a recent opinion concluded "that the *Royal Typewriter* opinion was not intended to qualify *Standard Electrica* with respect to the subject matter of the earlier case (palletized shipment) but was intended to deal only with the quite different problems presented by containerization." *Menley & James Laboratories, Ltd. v. M/V Hellenic Splendor,* 433 F.Supp. 252 (S.D.N.Y.1977). While the "functional economics test" is not controlling in a palletized shipment case, it is one relevant factor to be considered, as the court did in *Menley & James, supra,* when it found no evidence that any of the cartons were suitable for individualized shipment.

The evidence in the instant case is significantly at variance with *Menley & James;* of the 31 kegs shipped, 27 were palletized, leaving 4 kegs transported loose. The kegs clearly qualify as "packages" under the "functional economics test."

Furthermore, if this Court were to find a pallet to be a package, relying on *Standard Electrica* as exclusive authority, it would be exalting a pallet or similar device used principally to facilitate transportation and handling, to the status of a "package," at the same time giving no weight to other elements of at least equal importance. Unlike the facts in *Standard Electrica, supra,* here the carrier was aware of the number of kegs in each pallet. Not only were the kegs visibly identifiable, but the endorsement by the carrier on the Bill of Lading described the 3 pallets as containing 27 "packages." The term "package" is a word of art in respect to an ocean Bill of Lading.

Based on all the facts abovementioned, the Court finds that each keg was a "package" within the package limitation clause of the Bill of Lading as authorized by COGSA § 4(5). Plaintiff is entitled to judgment in its favor in the amount of $9,000.00 and interest at 6% per annum from July 14, 1977 and costs to be taxed.

The foregoing shall constitute the findings of fact and conclusions of law of the Court pursuant to Rule 52, F.R.Civ.P. The Clerk shall enter judgment pursuant to Rule 58, F.R.Civ.P.